## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IBT/HERE EMPLOYEE REPRESENTATIVES' COUNCIL, 1125 17th Street, N.W., Suite 504 Washington, D.C. 20036 *Plaintiff,* | ) ) ) ) ) ) | |
| *v.* | ) ) | No. |
| GATE GOURMET DIVISION AMERICAS, 11710 Plaza America Drive, Suite 800 Reston, VA 20190 *Defendant.* | ) ) ) ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

This is a complaint by the certified representative of employees of Gate Gourmet Division Americas ("Gate Gourmet") who are covered by the Railway Labor Act, 45 U.S.C. § 151, *et seq*., to enforce the commands of that Act, which defendant Gate Gourmet has violated, and continues to violate, by announcing that as of July 1, 2005, it will unilaterally alter the actual objective working conditions of its employees while the parties are negotiating new agreement terms. This suit is also to preserve the jurisdiction of the adjustment board created by Gate Gourmet and the IBT/HERE Employee Representatives' Council ("Council") to resolve disputes arising from the interpretation or application of agreements concerning rates of pay, rules, or working conditions. By this complaint, the Council seeks declaratory relief and an injunction prohibiting Gate Gourmet from ceasing to pay its portion of the costs for the Medical Care coverage to which its employees are entitled under the collective bargaining agreement between Gate Gourmet and the Council.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff IBT/HERE Employee Representatives' Council is a labor organization established in 2000 by the chief executive officers of the International Brotherhood of Teamsters ("IBT") and the former Hotel Employees and Restaurant Employees International Union ("HERE") (which has since merged to form UNITE HERE) to represent for collective bargaining purposes employees of Dobbs International Services, Inc., d/b/a Gate Gourmet. Plaintiff Council is a representative of employees as those terms are defined in Sections 1 Fifth and 1 Sixth of the Railway Labor Act, 45 U.S.C. §§ 151 Fifth and 151 Sixth.

2.      Defendant Gate Gourmet Division Americas is a carrier subject to Title II of the Railway Labor Act. It employs over 7,000 employees at various facilities throughout the United States who are represented for collective bargaining purposes by the Council.

3.      This Court has jurisdiction over this suit by virtue of 28 U.S.C. §§ 1331 and 1337(a), since this suit is to enforce the Railway Labor Act, an Act of Congress regulating interstate commerce.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) since Gate Gourmet operates a facility in this judicial district where it employs workers who are represented by the Council and who will be affected by Gate Gourmet's unlawful actions.

## FACTUAL BACKGROUND

5.      In 1999, Gate Gourmet acquired the kitchen, commissary and catering operations of Dobbs International Services, Inc. Prior to that acquisition, Dobbs' kitchen, commissary and catering operations were subject to the National Labor Relations Act, 29 U.S.C. § 151, *et seq*. Gate

Gourmet's acquisition brought Dobbs' kitchen, commissary and catering operations under the Railway Labor Act.

6. IBT and HERE affiliated local unions, collectively, represented a majority of Dobbs' employees prior to the Gate Gourmet acquisition, while other employees of Dobbs were represented by several other labor organizations and some Dobbs employees were unrepresented.

7. IBT and HERE formed the Council and filed an application with the National Mediation Board ("NMB") under Section 2 Ninth of the Railway Labor Act, 45 U.S.C. § 152 Ninth, to be certified as the duly designated representative of Gate Gourmet's craft or class employees systemwide. On October 11, 2000, the NMB issued a certification, certifying the Council as the duly designated representative of the craft or class of Kitchen, Commissary, Catering and Related Employees employed by Dobbs International Services, Inc., d/b/a Gate Gourmet, its successors and assigns. *In re Dobbs International Services, Inc.*, 28 N.M.B. 7 (2000).

8. Prior to that certification, Gate Gourmet had recognized the Council as the representative of its craft or class employees and entered into a collective bargaining agreement with the Council, known as the National Master Agreement ("NMA"). The NMA continued in effect the collective bargaining agreements (referred to as "local Addendums") Dobbs had entered into with the IBT and HERE affiliates, including those agreements by which Dobbs agreed to participate in and to contribute to various employee welfare benefit plans providing medical, surgical, hospital and similar care and benefits to covered employees.

9. Except for that portion of the NMA establishing a System Board of Adjustment ("SBA") pursuant to Section 204 of the Railway Labor Act, 45 U.S.C. § 184, which applied to the entire Gate Gourmet system, the provisions of the NMA did not apply to Gate Gourmet craft or class

employees employed at those Gate Gourmet facilities where, prior to the Gate Gourmet acquisition, the Dobbs employees were represented by certain AFL-CIO affiliated labor organizations other than the IBT and HERE affiliated local unions. The Council, as authorized by Section 2 Third of the Railway Labor Act, 45 U.S.C. § 152 Third, designated those AFL-CIO affiliated labor organizations as its bargaining agent for the craft or class employees employed at those facilities, and those designated bargaining agents were given the option of adopting the NMA or continuing in effect their collective bargaining agreements with Dobbs.

10.    Article 24 of the NMA, entitled "Health and Life Benefit," provides as follows:

**Section 1.** Regular, full-time bargaining Employees will be eligible to participate in the Company's Health Care Program and the Basic and Supplemental Group Term Life/AD&D Insurance. Regular, full-time Employees will become eligible to participate in these plans on the first day of the calendar month following ninety (90) days of continuous employment. The minimum life insurance provided will be in the amount of $8,000.00 The provisions of all these plans are contained in the plan descriptions themselves which are incorporated by reference hereto.

While administration of the plan remains a Company prerogative, bargaining unit Employee's contribution rates for the various health plans and optional life insurance will be the same each year as the contribution rates for management/salaried employees.

Further, the Company agrees that should there be any change in the benefit level of the Health Care and Life Insurance Plans during the term of this Agreement it will apply to the Employees covered under this Collective Bargaining Agreement.

11.    Article 34 of the NMA, entitled "Superiority Agreement," provides as follows:

It is understood between the Company and the Union that no employee in any location will suffer a reduction in any wages, or benefits from his present level as a direct result of this Master Agreement. Furthermore, if any local Addendums terms and conditions exceed the terms and conditions of the Master, then the

local Addendum shall apply during the term of the Master Agreement. In instances where the Master Agreement language and/or benefits are superior to the local addendum, the Master Agreement will apply at the time the Local Addendum is subject to amendment.

12.     Article 36 of the NMA, entitled "Amendment," provides as follows:

This Agreement shall become effective June 1, 2000 and thereafter remaining in effect until changed in accordance with the provisions of the Railway Labor Act.

Neither party shall, prior to April 1, 2004 serve a notice on the other party, pursuant to section 6 of the Railway Labor Act, to change any term of the Agreement, which change shall not be effective prior to June 1, 2004.

13.     In December 2003, Gate Gourmet proposed that the NMA be modified. The Council waived the restrictions that Article 36 of the NMA placed upon Gate Gourmet's right to propose changes to the NMA prior to April 1, 2004, and agreed to confer with Gate Gourmet over those proposed changes. In April 2004, the Council served various proposed changes to the rates of pay, rules, and working conditions established by the NMA, and conferences on those proposed changes occurred together with conferences on the agreement-changes proposed by Gate Gourmet.

14.     On October 21, 2004, Gate Gourmet proposed deep, across-the-board cuts in wages and benefits, which it contended were necessary to enable it to remain competitive. Several days later, on October 27, 2004, Gate Gourmet announced that, effective January 1, 2005, it would reduce the benefits provided by the Health Care Plan and it would increase the employee monthly contribution. Monthly premiums were to increase from $31.32 to $119.07 for Employee Only coverage, and from $155.63 to $362.61 per month for Family coverage.

-5-

15.    The Council responded to Gate Gourmet's October 27, 2004 announcement by asserting that such changes in pay and benefits violated both the Railway Labor Act and the NMA. Additionally, the Council filed a grievance on December 2, 2004, asserting that the proposed benefit decrease and premium increase violated Article 34 of the NMA. A true and accurate copy of the initial protest and the grievance are attached hereto as Exhibits 1 and 2, respectively.

16.    Gate Gourmet responded on April 8, 2005, asserting that: "The health care benefit changes that became effective on January 1, 2005 for represented employees of Gate Gourmet covered by the Company-sponsored plan are consistent with the 'me-too' provision contained in Article 24, HEALTH AND LIFE BENEFIT, of the NMA which provides in part that ' . . . should there be any change in the benefit level of the Health Care and Life Insurance Plans during the term of this Agreement it *will apply* to the Employees covered under this Collective Bargaining Agreement' (italics added for emphasis)." Response at 2. A true and accurate copy of that response is attached hereto as Exhibit 3.

17.    On April 20, 2005, the Council referred the contract interpretation dispute over the unilateral changes in Health Care coverage and costs to the SBA established by the NMA. That grievance was scheduled to be heard on June 8, 2005, but was mutually postponed until August 9, 2005. The Council intends to schedule the SBA's consideration of that grievance so that it will be resolved with the grievance the Council filed on June 3, 2005, over the subsequent unilateral changes Gate Gourmet has made to its contribution to the Health Care Plan.

18.    On May 4, 2005, Gate Gourmet gave the Council what it stated was its "last best offer," which the Council agreed to submit to the craft or class for a vote. Voting on that proposed contract concluded on May 31, 2005, with 94% voting to reject the proposed contract.

19.     Gate Gourmet's "last best offer" would have reduced base wages by 9.9% and frozen those reduced rates for a number of years. It would have eliminated various pay premiums, given the carrier an increased right to use part time employees, and reduced both sick leave and vacation. As relevant here, the carrier's proposal would have required the employees who are covered by Gate Gourmet's Health Care Plan to pay 50% of all future increases in Health Care premiums; it would also have limited Gate Gourmet's contributions to the local Addendum employee welfare benefit plans .

20.     Shortly before the voting was scheduled to begin on the proposed contract, Gate Gourmet caused a communication (dated May 12, 2005) to be distributed to the employees, informing them that (emphasis in original):

> Because our Divisional financial performance continues to decline and our labor costs remain uncompetitive under the current labor contract, the company Medical Plan subsidy will end on June 30, 2005 if the new contract is not approved by the union membership.
>
> If the new contract is not approved, we will continue to offer the Medical Plan, **but you will be responsible for the full monthly cost beginning in July.** Your new monthly contribution would be based on your coverage level:

| Coverage Level | Current Monthly Rate | New Monthly Rate |
|---|---|---|
| Employee Only | $119.07 | $390.57 |
| Employee + Child(ren) | $228.66 | $757.25 |
| Employee + Spouse | $267.90 | $796.49 |
| Family | $362.61 | $1,148.27 |

> If you want to continue to participate in the Medical Plan after June 30, 2005 you must re-enroll. You can enroll by calling the Benefit Headquarters at 888-731-8206 between Thursday, May 19 and Wednesday, June 1 [that end date was extended to and including June 8, 2005].

> If you do not re-enroll during this time, your medical benefits will expire on June 30, 2005 if the labor contract is not approved. If the contract is approved, your prior election will continue and any election changes made during this special enrollment will not be implemented.

* * *

> We regret having to make these changes, but if the contract is not approved, we must find other ways to immediately reduce our costs.

A true and accurate copy of that communication is attached hereto as Exhibit 4.

21.    Approximately 5,400 of Gate Gourmet's craft or class employees (including approximately 492 employees employed at Gate Gourmet facilities where non-Council AFL-CIO unions have been designated as the Council's bargaining agent) are covered by Gate Gourmet's Health Care Plan. The remaining approximately 2,200 Gate Gourmet craft or class employees are covered by employee health and welfare plans provided through the local Addendums, including approximately 377 employees employed at a facility where a non-Council union has been designated as the Council's bargaining agent. At present, it does not appear that Gate Gourmet intends to discontinue its contributions to the local Addendum plans.

22.    Upon information and belief, plaintiff states that Gate Gourmet has informed those managers and supervisors who are covered by Gate Gourmet's Health Care Plan and who are being required to pay increased premiums that, effective July 1, 2005, they would receive a monthly payment of $500 in addition to their regular salary. Various Gate Gourmet managers have confirmed that they will receive such payments, but others have informed the Council that the amount is $350 per month, not $500. Upon information and belief, plaintiff further states that the new monthly payment is intended to rebate to the managers and supervisors in whole or in substantial part the

monies those individuals must pay for the increase in Health Care premiums as a result of Gate Gourmet's unilateral change in Health Care costs for its craft or class employees.

23.     On June 3, 2005, the Council protested Gate Gourmet's proposed unilateral changes to the Health Care coverage the company has agreed to provide to employees represented by the Council. A true and accurate copy of that communication is attached hereto as Exhibit 5. The Council asserted that the proposed changes were a violation of the status quo obligation that the Railway Labor Act imposes on Gate Gourmet and the Council to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose over the agreement changes Gate Gourmet and the Council have proposed under Section 6 of the Railway Labor Act, and which are involved in or related to that dispute, such as the carrier's share of the Health Care costs. The Council asked Gate Gourmet to rescind its proposed discontinuance of its contribution to the Health Care costs.

24.     The Council has been informed that Gate Gourmet will not rescind its planned discontinuance of those payments.

25.     The Council's June 3, 2005, communication also included a grievance should Gate Gourmet not rescind its announced end to its contribution for the Health Care costs. The Council asked Gate Gourmet to expedite its consideration of that grievance.

26.     On June 7, 2005, the Council supplemented its protest and grievance; a true and accurate copy of that communication is attached hereto as Exhibit 6.

27.     On June 10, 2005, the Council informed Gate Gourmet that, in light of the overwhelming rejection of Gate Gourmet's "last best offer" and Gate Gourmet's refusal to rescind its proposed discontinuance of its Health Care payments, the Council considered conferences over

the pending Section 6 notices to have terminated. A true and accurate copy of that communication is attached hereto as Exhibit 7.

28.    On June 15, 2005, Gate Gourmet invoked the jurisdiction of the NMB under Section 5 First of the Railway Labor Act, 45 U.S.C. § 155 First, to mediate the disputes over the proposed changes to the NMA, including the dispute over the Health Care contributions. The NMB docketed that dispute as NMB Case No. A-13373, adding: "The parties are reminded of the status quo provisions of the Railway Labor Act." A true and accurate copy of the NMB docketing letter is attached hereto as Exhibit 8.

29.    On June 7, 2005, Gate Gourmet orally denied the Council's grievance over the proposed July 1, 2005 changes.

30.    On June 17, the Council referred the dispute over Gate Gourmet's claim of a contractual justification for its discontinuance of its Health Care payments to the Gate Gourmet-Council SBA for resolution; a true and accurate copy of that referral is attached hereto as Exhibit 9. That grievance will be heard by the SBA on the same date that the earlier grievance over the January 1, 2005 changes will be heard by the board, which is on August 9, 2005.

## COUNT I (VIOLATIONS OF THE RAILWAY LABOR ACT)

31.    Section 2 First of the Railway Labor Act, 45 U.S.C. § 152 First, provides that:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

-10-

32.    Section 2 Seventh of the Railway Labor Act, 45 U.S.C. § 152 Seventh, provides that:

> No carrier, its officers or agents shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 6 of this Act.

33.    Section 6 of the Railway Labor Act, 45 U.S.C. § 156, requires carriers and representatives of employees to give at least thirty (30) days written notice of intended changes in agreements affecting rates of pay, rules, or working conditions. It further provides that:

> In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by section 5 of this Act, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

34.    Section 5 First of the Railway Labor Act, 45 U.S.C. § 155 First, provides in pertinent part that, if the NMB's mediatory efforts fail to bring about a resolution of the dispute, the NMB, as its final required action, "shall at once endeavor . . . to induce the parties to submit the controversy to arbitration . . . ." Section 5 First further provides that:

> If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under section 10 of this Act, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

35.    The Railway Labor Act's status quo obligation applies to the dispute raised by Gate Gourmet's proposals to change the existing agreements, including the agreement by which Gate

Gourmet pays a portion of the Health Care costs. That status quo obligation requires that Gate Gourmet "preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose [here, the dispute over the agreement changes Gate Gourmet and the Council have proposed under Section 6 of the Railway Labor Act,] and which are involved in or related to that dispute[, such as the carrier's share of the Health Care costs]." *Detroit & Toledo Shore Line R.R. v. UTU*, 396 U.S. 142, 153 (1969).

36.    By announcing that it will, effective July 1, 2005, unilaterally alter its obligation to pay a portion of the Health Care costs by discontinuing those payments, and by asserting in bad faith that such changes are justified by its agreement with the Council, Gate Gourmet has violated, and is continuing to violate, both its duty to exert every reasonable effort to make and maintain agreements and its obligation to preserve and maintain the status quo during the major dispute raised by the Section 6 notices to change existing agreements.

## COUNT II (PRESERVATION OF THE SBA'S JURISDICTION)

37.    Section 204 of the Railway Labor Act, 45 U.S.C. § 184, requires carriers, which are subject to Title II of the Railway Labor Act, such as Gate Gourmet, to establish adjustment boards to resolve disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . ." 45 U.S.C. § 184. Section 204 further provides that the parties to such a dispute growing out of the interpretation or application of agreements, which are called "minor disputes," are to attempt to resolve such disputes by conferences, "but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board" for final and binding resolution. 45 U.S.C. § 184.

-12-

38.     Gate Gourmet's announced intention to end its payment of its portion of the cost for Health Care coverage for its craft or class employees, while compensating its managers and supervisors in whole or in substantial part for their increased costs, is not based on a good faith interpretation of the NMA. It is a unilateral change in the rates of pay and working conditions of its employees, as a class as embodied in the NMA, in a manner that is not prescribed either in the NMA or in Section 6 of the Railway Labor Act. It is, therefore, a violation of Section 2 Seventh of the Railway Labor Act, as well as a breach of the NMA.

39.     Gate Gourmet employees who are represented by the Council and who are currently participating in the Gate Gourmet Health Care Plan will be irreparably harmed if Gate Gourmet ends its payment of its portion of the Health Care coverage as of July 1, 2005, before the contract interpretation dispute may be resolved by the Gate Gourmet-Council SBA. Gate Gourmet craft or class employees cannot afford the increased costs to continue coverage under the Gate Gourmet Health Care Plan, and most have no other available method to obtain Medical and Hospitalization insurance to enable them to obtain needed medical treatment. A subsequent award by the SBA rejecting Gate Gourmet's bad faith interpretation of the NMA will be but an empty victory for those employees whose medical conditions have developed or worsened, or who have suffered untreated medical emergencies in the interim, because the SBA will have no power or ability to undo the harm the employees and their families will have suffered due to the loss of Medical and Hospitalization insurance coverage.

40.     An injunction prohibiting Gate Gourmet from changing the status quo while the SBA considers Gate Gourmet's claim (which has been made in bad faith) that it has a contractual right to take the disputed action, is necessary to preserve the jurisdiction of the SBA to render a

meaningful award resolving the dispute raised by Gate Gourmet's announced unilateral abrogation of its contractual obligation to pay a portion of the Health Care costs.

### PRAYER FOR RELIEF

Plaintiff Council respectfully requests that this Court grant it the following relief:

A.    Issue a declaratory judgment that Gate Gourmet's announced plan to discontinue paying its portion of the Health Care coverage for its craft or class employees violates the duty imposed upon it by Section 2 First of the Railway Labor Act to exert every reasonable effort to make and maintain agreements, the duty imposed upon it by Section 2 Seventh of the Railway Labor Act not to make unilateral changes in rates of pay embodied in agreements, and the status quo obligation imposed upon it by the Railway Labor Act to preserve and maintain unchanged those actual, objective working conditions that were in effect prior to the proposals to change its Health Care contribution obligations.

B.    Issue a Temporary Restraining Order and then an injunction prohibiting Gate Gourmet, both preliminarily and permanently, from discontinuing payment of the same percentage of the Health Care costs that it has been paying since January 1, 2005, until either Gate Gourmet's Health Care obligations under the NMA are modified in accordance with the provisions of the Railway Labor Act, or the Gate Gourmet-Council SBA issues an award finally resolving the disputes raised by Gate Gourmet's changes to its "Medical Plan subsidy."

C.    Grant to the Council such other and further relief that this Court deems to be just and proper, such as attorneys' fees and costs for enforcing Gate Gourmet's obligations under the Railway Labor Act.

Respectfully Submitted,


_____/s/ John O'B. Clarke, Jr._____
John O'B. Clarke, Jr. (Bar No. 044685)
HIGHSAW, MAHONEY & CLARKE, P.C.
1050 17th Street, N.W., Suite 444
Washington, D.C. 20036
(202) 296-8500


_____/s/ Roland P. Wilder, Jr._____
Roland P. Wilder, Jr. (Bar No. 69069)
Susan Boyle (Bar No. 441102)
BAPTISTE & WILDER, P.C.
1150 Connecticut Ave., N.W., Suite 500
Washington, DC 20036
(202) 223-0723

DATE: June 20, 2005                    Attorneys for Plaintiff Council

## VERIFICATION

**KENNETH C. PAULSEN** hereby declares pursuant to 28 U.S.C. § 1746, under penalty of perjury, that he is and has been since January 1, 2005, the chief executive officer of the IBT/HERE Employee Representatives' Council; that he has reviewed the above Complaint For Declaratory and Injunctive Relief; and that the facts set forth in that Complaint are true and correct.


　　　　　　　　　　　　　　　　　　　　　　 /s/ Kenneth C. Paulsen
Date: June 20, 2005　　　　　　　　　　　　 Kenneth C. Paulsen