## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IBT/HERE EMPLOYEE REPRESENTATIVES' COUNCIL, | Civil Action No.  1:05CV01210 |
|  | Judge Ricardo Urbina |
| Plaintiff, |  |
| v. |  |
| GATE GOURMET DIVISION AMERICAS and GATE GOURMET, INC., |  |
| Defendants. |  |

## DECLARATION OF KEITH WARREN IN SUPPORT OF GATE GOURMET'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

I, Keith Warren, declare and state as follows:

1.      I submit this Declaration in support of the Opposition of Gate Gourmet, Inc. ("Gate Gourmet") to the IBT/HERE Employee Representatives' Council (the "Union") Motion for Temporary Restraining Order.  If called to testify in the above-captioned matter, I could and would testify competently to the following facts that are within my personal knowledge.

2.      I am a partner at the law firm of Ford & Harrison in Memphis, Tennessee.  I was retained by Gate Gourmet to provide legal services in connection with Gate Gourmet's negotiations with the Union in 1999 to 2000.

## Background

3.    The Union is the certified collective bargaining representative under the RLA of Gate Gourmet's kitchen, commissary and catering work personnel. Gate Gourmet and the Union are parties to a national collective bargaining agreement (the "National Master Agreement" or "NMA") as well as numerous local addenda specific to particular locations.

4.    Until 2000, Gate Gourmet – then known as Dobbs International Services, Inc. ("Dobbs") – was subject to the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (the "NLRA"), and each geographical site/city was considered as a separate bargaining unit. The employees at many, but not all, of those kitchens had organized, and Dobbs had approximately 25 collective bargaining agreements with several different unions.

5.    In 1999, SAirGroup, the parent of SwissAir, purchased Dobbs, and thereafter the National Mediation Board ("NMB") determined that the Company was a "carrier" subject to the RLA. In that decision, the NMB certified the IBT/HERE Employee Representatives' Council as the representative of the entire, system-wide craft or class of kitchen, catering and commissary employees on a nationwide basis.

6.    The IBT/HERE Employee Representatives' Council (the "Union") was formed in 2000 by the International Brotherhood of Teamsters ("IBT") and the Hotel Employees and Restaurant Employees International Union ("HERE") following the purchase of Dobbs by SAir.

7.    IBT and HERE formed the Union, in substantial part, in recognition that the purchase brought Dobbs under the RLA, and that under the RLA there had to be a single collective bargaining representative for the entire system. At the time, IBT represented about 31 percent of the 10,651 employees system-wide, and HERE represented 32 percent. Rather than

have a run-off election in which one of the unions would have lost representation rights entirely, they agreed to form the Union since, in the aggregate, these two represented a majority of employees in the system-wide craft or class. As part of this arrangement, the Union informed its own IBT and HERE affiliated local unions, as well as other AFL-CIO affiliated unions who represented smaller groups of employees, that the Union would delegate Local Addendum bargaining authority to them at only the kitchens and sites where they previously had representation rights under the NLRA.

8.      After IBT and HERE formed the Union, Dobbs agreed to allow the NMB to certify the Union based on a "card check" rather than its normal mail ballot election procedures.

### The National Master Agreement and the Local Agreements

9.      Concurrent with the proceedings before the NMB, the Company and the Union entered into negotiations for a single collective bargaining agreement covering the entire system. In approximately April/May, 2000, the parties executed the IBT/HERE Employee Representatives' Council - Gate Gourmet Dobbs International National Master Agreement (the "National Master Agreement" or "NMA"). The NMA became effective on June 1, 2000, and became amendable on June 1, 2004.

10.     At the time that the NMA was executed, the Company had approximately 25 agreements covering flight kitchens at various geographical sites/cities that were executed while the Company was subject to the NLRA. The parties agreed, therefore, that these agreements would continue in force as "Local Addendums" to the NMA. The parties further agreed, in Article 34 of the NMA, that if the Local Addenda provided greater wages or benefits than the NMA, the Local Addenda would control wages or benefits. Any suggestion by the Union that the NMA did not apply to stations with pre-existing Local Agreements is simply inaccurate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 29th day of June 2005, at _____Memphis, Tennessee_____

_____Keith Warren_____
Keith Warren .