UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IBT/HERE EMPLOYEE REPRESENTATIVES' COUNCIL, | : : : | | |
| Plaintiff, | : : | Civil Action No.: | 05-1210 (RMU) |
| v. | : : | Document No.: | 11 |
| GATE GOURMET DIVISION AMERICAS *et al.*, | : : : : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

DENYING THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

I.  INTRODUCTION

This matter comes before the court[1] on the motion of IBT/HERE[2] Employee Representatives' Council (the "Union") for a temporary restraining order. The Union represents employees of Gate Gourmet, Inc. (the "Company")[3] and seeks to enjoin the Company from its announced plan to eliminate employer contributions to the Company's health care plan (the "Plan") beginning July 1, 2005. The Union argues that the court should prevent the Company

---

[1] 29 U.S.C. § 107 states that "[n]o court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute . . . except after hearing the testimony of witnesses in open court." The parties agreed to waive a hearing on this matter. Because the court is denying the plaintiff's motion for injunctive relief, no concern should arise concerning the indication in 29 U.S.C. § 107 that a hearing in open court is a jurisdictional prerequisite to *granting* a motion for injunctive relief.

[2] "IBT" and "HERE" are abbreviations for International Brotherhood of Teamsters and Hotel Employees and Restaurant Employees International Union, respectively.

[3] Gate Gourmet, Inc. is a company within the other named defendant, Gate Gourmet Division Americas. Defs.' Opp'n at 4. For ease of reference, the court refers to the defendants collectively.

from eliminating its contributions pursuant to either (a) the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq*. ("RLA") that govern preservation of the *status quo* in major disputes or (b) decisional law that suggests courts may issue *status quo* injunctions in minor disputes to preserve the jurisdiction of arbitration boards.  The court determines that this case involves a "minor" dispute as defined by the RLA and that the Union therefore cannot seek a "major" dispute injunction.  The court refuses to issue a minor dispute injunction to preserve the jurisdiction of the arbitration board, however, because even assuming the court has the power to issue such relief, this case, as a matter of law, does not amount to one of the exceptional circumstances in which courts have suggested such relief is available.  Accordingly, the court denies the Union's motion for a temporary restraining order.

## II.  BACKGROUND

In April 2000, the parties executed a collective bargaining agreement (the National Master Agreement or "NMA") that became effective on June 1, 2000, and amendable on June 1, 2004. Am. Compl. ¶¶ 5-12; Defs.' Opp'n at 6.  The Company services airlines, and as the airline industry has struggled, so has the Company.  Defs.' Opp'n at 7-9; Goeke Decl. ¶¶ 5-11.  In pursuing cost reduction programs, the Company has endeavored to lower its "single largest expense," labor costs.  Goeke Decl. ¶ 13.  Beginning in December 2003, and in anticipation of the impending amendability of the NMA, the Company entered negotiations with the Union to cut costs.[4]  Defs.' Opp'n at 10; *see also* Am. Compl. ¶ 13 (describing the Company's proposals

---

[4] The Company served notices of proposed changes to the NMA pursuant to the RLA, which requires carriers and unions to give written notice of an intended change in agreements affecting rates of pay, rules or working conditions.  45 U.S.C. § 156.  Furthermore, the Union agreed to waive restrictions

as "deep, across-the-board-cuts in wages and benefits").

In May 2005, following unsuccessful negotiations, the Company provided the Union with the Company's "final offer," a package of reduced benefits and compensation representing the Company's last effort to negotiate with the Union.[5]  *Id.* ¶ 18; Defs.' Opp'n at 10; Bralich Decl. ¶ 5 & Ex. B.  The Company then announced that if the Union did not approve the proposal, the Company would require all employees (i.e., Union and non-Union) under the Plan to pay the full cost of medical coverage, with no contributions from the Company.[6]  Am. Compl. ¶ 20; Defs.' Opp'n at 14; Bralich Decl. ¶ 18.  The Union overwhelmingly rejected the offer, negotiations ended, and the Company applied for mediation.  Am. Compl. ¶ 17; Defs.' Opp'n at 10.

The Union alleges that the Company informed its managers and supervisors who were covered by the Plan (and thus, pursuant to the NMA, subject to the proposed elimination of employer contributions) that, effective July 1, 2005, the managers and supervisors would receive a monthly payment in addition to their salary.  Am. Compl. ¶ 22.  This payment, the Union alleges, offsets or at least decreases the financial impact on managers and supervisors of the Company's reduced contributions.  *Id.*  The Company, pointing to "unacceptable" attrition levels, maintains that the payment is part of a plan "to institute a broad-based retention program for

---

the NMA imposed on the Company's ability to propose any changes to the NMA prior to April 1, 2004.  Am. Compl. ¶ 13

[5]  The "last best offer" proposed, *inter alia*, to reduce (and freeze at the reduced level) wages and benefits and require employees to pay fifty percent of all future increases in health care premiums.  Am. Compl. ¶ 19; *see generally* Bralich Decl. Ex. B

[6]  This was not the first time the Company changed its health care benefits.  For example, in October 2004, the Company announced that, as of January 1, 2005, it would require increased employee contributions.  Am. Compl. ¶ 14; Defs.' Opp'n at 12.  The Union protested this change; the grievance is slated for arbitration on August 9, 2005, the same date that arbitration of the instant dispute will occur.  Defs.' Opp'n at 13.

management and salaried employees." Defs.' Opp'n at 15-16; Bralich Dec. ¶¶ 21-23.

### III.  ANALYSIS

#### A.  Statutory Framework

The Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq*. ("NLGA") governs the issuance of injunctive relief in certain cases growing out of or involving labor disputes. In general, the NLGA "expresses a basic policy against the injunction of activities of labor unions." *Int' Ass'n of Machinists v. Street*, 367 U.S. 740, 772 (1961). The act defines a labor dispute broadly: "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c).

The NLGA's "general limitation on district courts' power to issue injunctions in labor disputes must be accommodated to the more specific provisions of the [RLA]." *Pittsburgh & Lake Erie R. Co. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490, 513 (1989). Under the RLA, courts classify disputes between labor and management as "minor" or "major." *E.g.*, *Air Line Pilots Asso., Int'l., v. Eastern Air Lines, Inc.*, 863 F.2d 891, 895 (D.C. Cir. 1988) ("*Eastern Air Lines I*"). "[M]ajor disputes seek to create contractual rights, minor disputes to enforce them." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994). More specifically, a major dispute concerns "changes in rates of pay, rules, or working conditions and relates to the formation of collective bargaining agreements or efforts to secure them," whereas a minor dispute "involves a controversy over the interpretation or application of [an] agreement [ ] covering rates of pay,

rules, working conditions." *Nat' R.R. Passenger Corp. v. Transp. Workers Union*, 373 F.3d 121, 123-24 (D.C. Cir. 2004) (citations and quotations omitted; modifications in original).[7]

Parties must follow different dispute resolution procedures for major and minor disputes. A major dispute is subject to section 6 of the RLA, 45 U.S.C. § 156. In a major dispute,

> [a] party desiring to effect a change of rates of pay, rules, or working conditions must give advance written notice. The parties must confer, and if conference fails to resolve the dispute, either or both may invoke the services of the National Mediation Board, which may also proffer its services *sua sponte* if it finds a labor emergency to exist. If mediation fails, the Board must endeavor to induce the parties to submit the controversy to binding arbitration, which can take place, however, only if both consent. If arbitration is rejected and the dispute threatens "substantially to interrupt interstate commerce to a degree such as to deprive any section of the country of essential transportation service, the Mediation Board shall notify the President," who may create an emergency board to investigate and report on the dispute.

*Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 378 (1969) (citations omitted). Significantly, "[w]hile the [major] dispute is working its way through these stages, neither party may unilaterally alter the *status quo*." *Id.*

By contrast, 45 U.S.C. § 153 governs minor disputes and requires the parties to engage in binding arbitration. The parties are "free to act under [their] interpretation of the collective bargaining agreement until the arbitrator rules otherwise[.]" *Air Line Pilots Ass'n, Intern. v. Eastern Air Lines, Inc.*, 869 F.2d 1518, 1519-20 (D.C. Cir. 1989) ("*Eastern Air Lines II*") (holding that "[b]ecause we find that this case involves only a 'minor dispute' over the interpretation of the collective bargaining agreement, the trial court had no jurisdiction to issue a

---

[7] As the Seventh Circuit has stated, "[t]he line between interpreting and changing an agreement is often fuzzy. A refusal to follow apparently clear contractual language could be a unilateral modification of the contract, thereby generating a major dispute, or a bold and possibly erroneous interpretation of the contract, thereby generating a minor dispute." *Bhd of Locomotive Eng'rs v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d 914, 920 (7th Cir. 1985).

*status quo* injunction. Rather, the Union was required to take its grievance to binding arbitration under the parties' collective agreement").

### B. Legal Standard for a Motion for a Temporary Restraining Order

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000). It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. May 3, 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

Under the RLA, when applying the traditional standard for issuance of injunctive relief to major disputes, "[t]he district courts have subject-matter jurisdiction to enjoin a violation of the *status quo* pending completion of the required procedures, without the customary showing of irreparable injury." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989); *Southern Ry. Co. v. Bhd. of Locomotive Firemen and Enginemen*, 337 F.2d 127, 133-34 (D.C. Cir. 1964) (holding that a showing of irreparable injury for injunctive relief is not required in light of the public interest in settlement of labor disputes and the fact that the duty to maintain the *status quo* "contains no qualification to the effect that the carrier has no obligation to [maintain the *status quo*] unless irreparable injury would otherwise result").

**C. The Plaintiff Fails to Demonstrate a Substantial Likelihood of Success on the Merits**

### 1. The Parties are Engaged in a Minor Dispute

In determining whether this dispute is major or minor, "[t]he court does not consider the merits of the underlying dispute; its role is limited to determining whether the dispute can be

7

characterized as involving the proper application or meaning of a contract provision." *Eastern Air Lines II*, 869 F.2d at 1521 (quoting *Railway Labor Exec. Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 704 (7th Cir. 1987)). The court must resolve any doubt as to whether the dispute is major or minor in favor of the latter characterization, *id.*, and "must not place undue emphasis on the contentions or maneuvers of the parties," but should instead look to the terms of the existing agreement, *Rutland Ry. v. Bhd. of Locomotive Eng'rs,* 307 F.2d 21, 33 (2d Cir. 1962). *See also Con. Rail Corp.*, 491 U.S. at 305 (holding that the distinction between major and minor disputes turns not on a "case-by-case determination of the importance of the issue presented," but on whether "the terms of an existing agreement either establish or refute the presence of a right to take the disputed action"). Ultimately, "if the action is *arguably justified* by the terms of the parties' agreement," the dispute is minor. *Consolidated Rail Corp.*, 491 U.S. at 310 (emphasis added).

> In this case, Article 24 of the NMA ("Health and Life Benefits") states:
>
> [w]hile administration of the [P]lan remains a Company prerogative, bargaining unit Employee's contribution rates for the various health plans and optional life insurance *will be the same each year as the contribution rates for management/salaried employees.*
>
> Further, the Company agrees that should there be any change in the benefit level of the Health Care and Life Insurance Plans during the term of this agreement[,] it will apply to the Employees covered under this Collective Bargaining Agreement.

Pl.'s Mot. at 5 (emphasis added). The Union does not dispute that, at least superficially (i.e., without taking into account the retention payment) the Company's elimination of employer contributions applies equally to Union and non-Union employees. Thus, the court concludes that the Company's interpretation of Article 24 of the NMA as permitting the reduction in employer

contributions is "arguably justified" based on a plain reading of Article 24. *Consol. Rail Corp.*, 491 U.S. at 310.

Nevertheless, the Union argues that the Company's retention payments constitutes bad faith and therefore creates a major dispute subject to a *status quo* injunction. *E.g.*, Pl.'s Mot. at 26. A completely unreasonable interpretation of a collective bargaining agreement may create an inference of bad faith, thereby constituting a repudiation of the agreement and thus a major dispute. *Air Line Pilots II*, 869 F.2d at 1519. But for this to occur,

> even if the court is absolutely convinced that the agreement prohibits the party's action, it may not infer that the party has repudiated the agreement, generating a major dispute, unless the court makes the "essential finding" that the party's proffered interpretation is "so inherently unreasonable as to amount to bad faith."

*Id*. at 1523 & n.5 (rejecting the argument that a court can find a major dispute simply based on a violation of the contract and stating that, "[t]o hold otherwise would allow the court to find a major dispute based solely on its view of the merits – usurping the role of the arbitrator in interpreting and applying the contract").

Here, it is impossible for the court to make the "essential finding" that the Company's proffered *interpretation* of the NMA "is so inherently unreasonable as to amount to bad faith." *Id.* at 1523. Indeed, the bad faith rubric seems entirely inappropriate for the analysis, because the Union does not take issue with the Company's interpretation of the NMA as allowing the elimination of employer contributions to the Plan. The Union instead emphatically criticizes the almost simultaneous elimination of employer contributions and the issuance of retention payments to certain non-Union workers. It is not the court's role to ponder the suggestive contemporaneity of these events. Rather, the court is constrained to look for a provision in the

NMA on which the initial action – elimination of employer contributions – is arguably justified. Having found that justification in Article 24, this court's role is at an end.[8]  *Cf. Eastern Air Lines II,* 869 F.3d at 1521 (noting that the court may "'peek' at the merits of the party's contractual justification only when it is unclear whether there is an agreement or contractual provision that, when interpreted one way or the other, will resolve the dispute").

### 2. An Injunction is Not Necessary to Preserve the Jurisdiction of the SBA

The general rule is that courts lack jurisdiction to issue injunctive relief in minor disputes because parties must submit minor disputes to arbitration.  *E.g.*, *Eastern Air Lines II*, 869 F.2d at 1521 (holding that if a "'dispute is arguably resolved by reference to the collective bargaining agreement,' it is a minor dispute over which the courts have no jurisdiction").  Courts have nonetheless held that "even when a dispute has been found to be minor, a trial court may exercise equitable power to impose conditions requiring the employer to maintain the *status quo*, pending resolution of the dispute in arbitration."  *Eastern Air Lines II*, 869 F.2d at 1521 n. 2 (citation omitted) (noting that "[t]his exception applies only when an injunction is necessary to preserve the arbitrator's ability to decide the dispute"); *Niagara Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1377 (2nd Cir. 1991) (stating that "the union may obtain a *status*

---

[8] The Union also argues that the RLA's "*status quo* obligation has been triggered by the [Company's] various proposals to change the existing agreements."  Pl.'s Mot. at 13, 19, 20-21 (stating that "a claimed contractual right to change an actual, objective working condition during a major dispute over changes to that working condition does not relieve the carrier of its duty under the RLA to *preserve* the *status quo* during the major dispute") (citing *Southern Ry. Co. v. Bhd. of Locomotive Firemen and Enginemen*, 337 F.2d 127 (D.C. Cir. 1964)).  The Company responds that "the obligation to maintain the *status quo* under the RLA permits a carrier to make changes to the terms and conditions of employment where, as here, those changes are arguably permitted under the terms of a pre-existing collective bargaining agreement, even though the parties are in Section 6 negotiations for a new agreement."  Defs.' Opp'n at 30.  The court agrees with the Company on this point.  *Eastern Air Lines I*, 863 F.2d at 900 (holding that service of a Section 6 notice does not automatically create a major dispute); *Pittsburgh & Lake Erie R. Co.*, 491 U.S. at 509.

*quo* injunction against an employer when the employer's action has the effect of frustrating the arbitral process, or rendering it a 'hollow formality'") (quoting *Lever Bros. Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 123 (4th Cir. 1976)).[9]

The Union argues that any favorable award granted by an arbitrator would be an "'empty victory' because [the award] could not remedy the employees' inability to obtain medical treatment in the time period from July 1 – when most employees will lose their health coverage under the Gate Gourmet benefit plan – and the date an arbitration decision finally issues." Pl.'s Mot. at 32. This court is aware of the personal difficulties workers will encounter as a result of this court denying injunctive relief. *E.g.*, Pl.'s Mot. at 33 & Rolack Decls. But such hardship – even the extreme cases to which the Union directs this court's attention – does not constitute an event that would affect the arbitrator's "ability to decide the dispute." *Eastern Air Lines II*, 869 F.2d at 1521 n. 2. But hinging the issuance of an injunction on an assessment of the degree of that hardship distracts from the proper inquiry: whether injunctive relief is needed to remedy a fundamental impediment to effectuating the congressional goal of arbitration. No such impediment exists in this case.[10] In any event, if the arbitrator finds that the Company's

---

[9] The Company argues that, after *Consolidated Rail Corp.*, these decisions are no longer viable statements of law. Opp'n at 36. The court need not decide that issue, because even assuming that the court has power to issue a minor-dispute *status quo* injunction, the Union fails as a matter of law to make the appropriate showing (that the injunction is necessary to preserve jurisdiction) for issuance of such an injunction. The court notes that even if the Union had made that showing, the Union would then need to meet the traditional standards for issuance of injunctive relief.

[10] *E.g.*, *Rubber Workers Local 884 v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1354 (8th Cir. 1995) (finding that arbitration was not rendered a "hollow formality" when health benefits were denied to union members, because the arbitrator could "order [the employer] to repay all monthly premium payments and deductibles that the employees were wrongly deprived of and require reinstatement of the levels of medical and dental coverages"); *Aluminum Worker's Local 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 444 (6th Cir. 1982) (holding that terminated employees would not suffer irreparable harm while waiting for their claims to be arbitrated, because "the availability of unemployment relief, health

contributions should have remained in effect, he can order retroactive reinstatement. Defs.' Opp'n at 20; *see also Aluminum Worker's Local 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 444 (6th Cir. 1982) (holding that granting an injunction for injuries related to temporary unemployment would "invite virtually every employee laid-off or discharged in a manner which arguably contravened the collective bargaining contract to resort to the courts to stay the onset of joblessness. We cannot avoid the conclusion that such a situation would have as much, if not more, of a corrosive effect upon the arbitral process as [the company's] actions allegedly will have here") (citing *Buffalo Forge Co. v. United Steelworkers of Am., AFL-CIO*, 428 U.S. 397, 410-11 (1976)). Accordingly, the court holds that the Union fails to demonstrate that arbitration of this dispute will be rendered meaningless without an injunction from this court.

### D. Other Factors

The Company urges this court to deny the Union's motion for a temporary restraining order due to the Union's unreasonable delay in seeking the requested relief. Defs.' Opp'n at 19 (arguing that "[t]he Union's delay in filing its papers until one week before the alleged deadline for a court ruling, when it could have filed more than six weeks ago (and has been working on its papers for a month), makes clear that the only emergency here is one the Union created") (citing *Fund for Animals v. Frizzell*, 530 F.2d 982, 987-88 (D.C. Cir. 1975)). Because the court is denying the Union's motion on substantive grounds, the Company's argument regarding delay does not factor into the court's analysis. Furthermore, because the Union cannot show any likelihood of success on the merits, and because that failure goes to this court's jurisdiction to

---

insurance, and, in certain situations, financial support from the union will help mitigate the financial pressures felt by the displaced employee awaiting arbitration").

proceed versus letting congressionally-mandated arbitration run its course, the court need not address the other factors for granting injunctive relief. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (holding that, "[w]ithout such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review").

## IV.  CONCLUSION

For the foregoing reasons the court, this 1st day of July, 2005, denies the Union's motion for a temporary restraining order.  An order consistent with this Memorandum Opinion issued on June 30, 2005.

RICARDO M. URBINA
United States District Judge
