UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IBT/HERE EMPLOYEE REPRESENTATIVES'  ) <br> COUNCIL,                                                ) <br>      *Plaintiff*,                               ) <br>                                                         ) <br>      *v*.                                          ) <br>                                                         ) <br> GATE GOURMET DIVISION AMERICAS, *et al.*, ) <br>      *Defendants*.                           ) <br>                                                         ) | No. 05-01210 (RMU) |

**OPPOSITION BY PLAINTIFF TO
MOTION BY DEFENDANTS TO DISMISS**

Defendants Gate Gourmet Division Americas and Gate Gourmet, Inc. have filed a motion pursuant to Rule 12(b)(1) and Rule 12(b)(6), Fed. R. Civ. P., to dismiss the Amended Complaint of plaintiff IBT/HERE Employee Representatives' Council ("Council"), asserting that this Court lacks jurisdiction over Count I of the Amended Complaint; that Count II is moot; and that the entire case is moot. Plaintiff, in turn, has filed a motion to hold this case in abeyance, but in the interim submits this pleading in opposition to defendants' motion to dismiss.

**PRELIMINARY STATEMENT**

As shown by the accompanying motion to hold this case in abeyance, plaintiff submits that this Court need not, and should not, address at this time the motion that defendants have filed to dismiss this complaint. But, if this Court concludes that it should address defendants' motion at this time, plaintiff submits that the motion should be denied, for this case continues to present a live case or controversy and this Court has jurisdiction to enforce the Railway Labor Act (RLA) commands at issue–*i.e.*, the obligation to preserve the status quo and the duty set forth in RLA § 2 First "to exert every reasonable effort to make and maintain agreements . . . and to settle all disputes . . . ." 45 U.S.C. § 152 First.

While defendants are correct that subsequent events[1] have mooted Count II of the Amended Complaint (the count to preserve the jurisdiction of the adjustment board), plaintiff submits that defendants are incorrect in asserting that this Court lacks jurisdiction over Count I of the Amended Complaint (the count to enforce the Railway Labor Act's (RLA) status quo obligation and duty it imposes upon carriers to exert every reasonable effort to make and maintain agreements) or that Count I is moot. However, as the accompanying motion to hold this case in abeyance shows, the pending arbitration as to whether Gate Gourmet violated its collective bargaining agreements by unilaterally failing to pay its contributions to the medical plan for the months of July and August 2005, may eliminate the need to address Count I. But, this does not mean, as defendants argue, that the case is moot. Depending upon how the arbitrator rules, there may be a need for plaintiff to ask this Court to enforce the RLA commands that plaintiff asserts Gate Gourmet violated when it threatened to, and then, unilaterally altered the status quo on July 1, 2005.[2] Its violated those commands by impermissibly exerting economic pressure against plaintiff and the employees plaintiff represents to "encourage" plaintiff and the employees to accede to the agreement changes defendants

---

[1]   Those developments are the fact that this Court denied plaintiff's motion to enjoin the July 1, 2005 elimination by Gate Gourmet of its contributions to the medical plan, the fact that Gate Gourmet implemented its change of the status quo, and the subsequent agreement by Gate Gourmet to reinstate those contributions as of September 1, 2005.

[2]   For example, the arbitrator may rule (incorrectly plaintiff submits) that he does not have jurisdiction to award make-whole relief beyond what the contract required the company to contribute to the medical plan. Here, the evidence presented at the arbitration hearing shows that an employee reacted to the discontinuance of the company's contributions by purchasing at her own expense replacement insurance coverage but is now locked into that replacement plan for one year. It is logical to assume that other employees are similarly situated. Those employees would not be obligated for those costs had Gate Gourmet complied with its status quo obligation. Thus, depending on how the arbitrator rules, it may be necessary for plaintiff to seek extra-contractual make-whole relief from this Court under its jurisdiction to enforce the RLA's commands by appropriate relief on a case-by-case basis. *Chicago & North Western Ry. v. UTU*, 402 U.S. 570, 577 (1971).

have proposed. Plaintiff submits that the potential need for this Court to provide relief for a harm that has already occurred means that this case is not moot. But again, the uncertainty as to the need for further relief from this Court means that the appropriate course of action at this time is to hold this case in abeyance while the parties pursue the arbitration process.[3]

I.  **THIS CASE IS NOT MOOT SINCE THE EMPLOYEES PLAINTIFF REPRESENTS ARE ENTITLED TO BE MADE WHOLE FOR THE HARM THEY SUFFERED WHEN DEFENDANTS VIOLATED THE RLA'S COMMANDS.**

In addition to arguing what is in essence a mootness claim as to Count II of the Amended Complaint (again, plaintiff agrees that subsequent events have rendered Count II moot), defendants contend that this lawsuit is moot. According to defendants, their agreement to reinstate Gate Gourmet's contributions to the company-sponsored medical plan as of September 1, 2005, moots this case because "no remedy is available to the Union under this lawsuit." Defs' Memo. at 9.[4] That argument is without merit, for what defendants ignore is that the employees the Council represents were injured by Gate Gourmet's failure to preserve the status quo between July 1, 2005 and August 31, 2005 and, thus, they are entitled to be made whole for that violation of their *statutory* rights. That harm–and the resultant need for an effective remedy–means that this case is *not* moot. *Compare*,

---

[3]    Defendants seek to make much of the fact that plaintiff refused defendants' request to dismiss this case (Defs' Memo. at 4) but fail to mention that their request was that the Council dismiss the suit *with prejudice*. They also fail to mention that they declined plaintiff's request–both before they filed their motion to dismiss and recently–to hold this case in abeyance.

[4]    Defendants assert that this case should be dismissed *with prejudice*, but what they fail to recognize is that such a result is inconsistent with a dismissal for mootness. If this case is moot (which, again, plaintiff submits it is not), the court may not address the merits, and, thus, a dismissal with prejudice would be beyond the court's powers. Consequently, the appropriate order when a case becomes moot is to dismiss the case as moot. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).

*Coalition of Airline Pilots v. FAA*, 370 F.3d 1184, 1198 (D.C. Cir. 2004), *with*, *McBryde v. Committee To Review Circuit Council Conduct*, 264 F.3d 52, 56-57 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 821 (2002).

It is well settled that Article III, Section 2 of the Constitution of the United States limits this Court's jurisdiction to actual "cases or controversies" and that this justiciablity requirement applies at all stages of the proceedings. *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990). As the *Clarke* court explained: "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-that-speculative chance of affecting them in the future.'" 915 F.2d at 701 (citation omitted). Moreover, this "requirement applies independently to each form of relief sought . . . and 'subsists through all stages of federal judicial proceedings, trial and appellate,' . . . ." *McBryde*, 264 F.3d at 55 (citations omitted).

Here, plaintiff's efforts in Count II of the complaint to "preserve" the jurisdiction of the adjustment board by enjoining Gate Gourmet from refusing to pay its share of its medical plan's costs is moot. That injunction was denied on June 30, 2005, and any continuing need for such an injunction was eliminated by the company's agreement to reinstate its contributions as of September 1, 2005. Thus, since nothing remains to be enjoined to preserve the adjustment board's jurisdiction, Count II is moot. *Coalition of Airline Pilots v. FAA*, 370 F.3d at 229.

Similarly, insofar as the complaint sought to require defendants to *resume* Gate Gourmet's contributions to the medical plan, the company's reinstatement of those contributions eliminates the need for that form of *prospective* relief. But, this does not moot the case, for there is still the two-

month period during which the company suspended its payments and the harm that this suspension caused to employees represented by plaintiff that needs to be addressed. Since federal courts have jurisdiction to enforce the RLA's status quo obligation and Section 2 First commands by enjoining changes of the status quo (*see*, *Consolidated Rail Corp. v. RLEA*, 491 U.S. 299, 303 (1989) ("The district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required [major dispute] procedures, without the customary showing of irreparable injury")), it arguably follows that they have jurisdiction to require that the carrier make whole the employees who were affected by that unlawful alteration of the status quo. *Chicago & North Western Ry. v. UTU*, 402 U.S. at 577 ("Accordingly, we think it plain that § 2 First was intended to be more than a mere statement of policy or exhortation to the parties; rather, it was designed to be a legal obligation, enforceable by whatever appropriate means might be developed on a case-by-case basis").[5/]

The need to address the alteration of the status quo during the two-month period between July, 1, 2005, and August 31, 2005, means that there is still a remedy that plaintiff must seek from

---

[5/]    The RLA does not provide a damage remedy for carriers against either a union or its employees for violations of the Act. *E.g.*, *American Airlines, Inc. v. Allied Pilots Association*, 228 F.3d 574, 584 (5th Cir. 2000), *cert. denied*, 531 U.S. 1191 (2001). However, that line of cases is not applicable here, for making employees whole is not a "damage" remedy, but rather, an exercise of a court's equitable powers. *E.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-22 (1975). As *Chicago & North Western* shows, this Court has the *equitable* jurisdiction to enforce RLA § 2 First.

this Court for the employees it represents.[6/] Thus, contrary to defendants' assertion, this case is not moot.

### II. THIS COURT'S RULING THAT GATE GOURMET'S CLAIMED CONTRACTUAL RIGHT TO CEASE ITS MEDICAL PLAN CONTRIBUTIONS PRESENTED A MINOR DISPUTE DOES NOT PRECLUDE RELIEF IN THIS CASE.

Defendants assert that this Court's July 1, 2005 ruling that the dispute over the company's right to eliminate its contributions to its medical plan presented a "minor dispute" requires that plaintiff's complaint be dismissed for lack of subject-matter jurisdiction. Defs' Memo. at 5-7. That argument is without merit, for the fact that this Court concluded that defendants' claimed contractual right to eliminate its health-care contributions presented a dispute to be resolved by an RLA adjustment board does not deprive this Court of jurisdiction to enforce the RLA's status quo command. *Order of Railway Conductors v. Pitney*, 326 U.S. 561, 567-68 (1946); *Southern Ry. v. Brotherhood of Locomotive Firemen*, 337 F.2d 127, 132-33 (D.C. Cir. 1964).

What defendants fail to acknowledge in asserting that this Court's interim ruling–that the company's reliance upon a claimed contractual right to alter the status quo presented a minor

---

[6/] It is possible that the arbitrator will be able to fashion a remedy that will make the employees whole and, thus, obviate the need to return to this Court for enforcement of the RLA obligations at issue. However, if the arbitrator should conclude that make-whole relief is not available under the contract, then plaintiffs must invoke this Court's jurisdiction to enforce the RLA's commands which Gate Gourmet violated when it unilaterally altered the status quo. What the Court said in *Consolidated Rail Corp. v. RLEA*, 491 U.S. at 310 n.8 with reference to minor disputes is applicable here: "There may be some circumstances . . . where the delay inherent in permitting the Board to consider the matter in the first instant will lead to remedial difficulties." Those remedial difficulties can be addressed by this Court determining what make-whole relief is appropriate since a ruling by the arbitrator that Gate Gourmet *did not* have the contractual authority to eliminate its company-sponsored medical plan contributions will mean that defendants violated their obligation under the RLA to maintain the status quo. *Detroit & Toledo Shore Line R.R. v. UTU*, 396 U.S. 142, 153 (1969).

dispute–deprives this Court of jurisdiction to consider whether defendants violated the RLA, is that adjustment boards have no jurisdiction to enforce the RLA's commands at issue here. This case raises the obligation to preserve the status quo during the major dispute currently being mediated by the National mediation Board, and the "duty" imposed by RLA § 2 First "to exert every reasonable effort to make and maintain agreements . . . and to settle all disputes . . . ." 45 U.S.C. § 152 First. Those issues are within this Court's *exclusive* jurisdiction. As the Second Circuit explained in *Air Cargo Inc. v. Local 851, IBT*, 733 F.2d 241, 246-47 (2d Cir. 1984) (footnote omitted):

> The System Board of Adjustment has exclusive jurisdiction in cases of minor disputes. . . . But no statutory jurisdiction has been accorded to the System Board in cases of major disputes, including disputes over proposed changes in working conditions, and the System Board thus cannot have any jurisdiction to determine the parties' obligations during such disputes. As a result, while the major dispute procedures of section 6 are being carried out, the district court has exclusive jurisdiction to ensure that the status quo is being maintained. It therefore has exclusive jurisdiction to determine what status quo is.

There can be no legitimate challenge to the fact that this case involves a major dispute, for the parties are presently resolving proposals to alter the existing contracts. Moreover, the facts presented to this Court on the requests for interim injunctive relief, as well as those developed at the arbitration hearing, show that defendants first threatened to and then eliminated the company's contribution to the company-sponsored medical plan in order to exert economic pressure against plaintiff and the employees to urge plaintiff and the employees to accept defendants' proposed contract changes. *Compare*, Complaint Ex. 4 ("If the new contract is not approved, we will continue to offer the medical plan, **but you will be responsible for the full monthly cost beginning in July**") (emphasis in original), *with*, Declaration of A.J. Bralich, Jr. at ¶¶ 19, 22-23, executed June

29, 2005 (showing "retention bonus" of $500 per employee per month being paid to at least 1,471 non-union employees) (this will cost the company $8,826,000 annually), *and*, Declaration of D. Goeke at ¶ 17, executed June 29, 2005 ("The annualized cost of employee contributions under the prior contribution schedule was roughly $11 million a year"). That action, plaintiff submits, violates the RLA's status quo and § 2 First commands.

Contrary to defendants' belief, the fact that federal courts do not have jurisdiction to interpret collective bargaining agreements, does not mean that federal court are divested of their jurisdiction to enforce the RLA. Rather, as the Supreme Court explained in *Order of Railway Conductors v. Pitney*, 326 U.S. 561(1946), the differing jurisdiction of the adjustment boards and the courts are complementary. As the *Pitney* Court explained, 326 U.S. at 567-68 (footnote omitted):

> Under these circumstances [where the interpretation of collective bargaining agreements determines whether a carrier properly gave work to one of two unions claiming the work] the court should exercise equitable discretion to give that agency [*i.e.*, the National Railroad Adjustment Board] the first opportunity to pass on the issue. Certainly the extraordinary relief of an injunction should be withheld, at least until then. . . . Only after the Adjustment Board acts, but not until then, can it plainly appear that such relief is necessary to insure compliance with the statute [*i.e.*, the RLA]. Until such time, [the union seeking the injunction] . . . can not show irreparable loss and inadequacy of the legal remedy. The court of equity should, therefore, in the exercise of its discretion stay its hand. . . .
>
> . . . The dismissal of the cause should therefore be stayed by the District Court, so as to give an opportunity for application to the Adjustment Board for an interpretation of the agreements. Any rights clearly revealed by such an interpretation might then, if the situation warrants, be protected in this proceeding.

Thus, contrary to Gate Gourmet's belief, the fact that this Court ruled that the company's claimed contractual defense raised an issue within the exclusive jurisdiction of the RLA's adjustment

boards, does not mean that Gate Gourmet was somehow relieved of its obligations under the RLA's major dispute procedures or that this Court no longer has jurisdiction to enforce those commands. Rather, Gate Gourmet implemented the change in the status quo at its peril. If the adjustment board rejects Gate Gourmet's contractual defense, then the effect of that ruling will be that Gate Gourmet altered the status quo in violation of its duty under the RLA to maintain and preserve the status quo–which this Court has jurisdiction to enforce. As Justice White explained in his concurring opinion in *Consolidated Rail Corp. v. RLEA*, 491 U.S. at 320-21: "If the Board decides that the company is wrong about its authority under the contract, the result will be that the company has sought a change in the contract without invoking the procedures applicable to major disputes." That is exactly what has occurred here. Thus, this Court's earlier ruling simply permitted Gate Gourmet to implement its alteration of the status quo, but it did not immunize that action or somehow relieve Gate Gourmet of its RLA obligations. Since Gate Gourmet continues to have its obligations to maintain the status quo and to exert every reasonable effort to settle all disputes, it follows that this Court continues to have jurisdiction to enforce those duties.

## CONCLUSION

Plaintiff submits that this Court should deny defendants' motion to dismiss.

Respectfully Submitted,

    /s/ John O'B. Clarke, Jr.
John O'B. Clarke, Jr. (Bar No. 044685)
HIGHSAW, MAHONEY & CLARKE, P.C.
1050 17th Street, N.W., Suite 444
Washington, D.C. 20036
(202) 296-8500

                                            Roland P. Wilder, Jr. (Bar No. 69069)
                                            Susan Boyle (Bar No. 441102)
                                            BAPTISTE & WILDER, P.C.
                                            1150 Connecticut Ave., N.W., Suite 500
                                            Washington, D.C. 20036
                                            (202) 223-0723

DATE: October 11, 2005                        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of October, 2005, caused a copy of the foregoing Opposition To Defendants' Motion To Dismiss to be served upon counsel for defendants by emailing a copy thereof in pdf format to:

                                            Tom Jerman
                                            O'Melveny & Myers LLP
                                            1625 Eye Street, N.W.
                                            Washington, D.C. 20036
                                            tjerman@omm.com

                                              /s/ John O'B. Clarke, Jr.
                                              John O'B. Clarke, Jr.