UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IBT/HERE EMPLOYEE REPRESENTATIVES' COUNCIL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1210 (RMU) |
| | : | | |
| v. | : | Document No.: | 35 |
| | : | | |
| GATE GOURMET DIVISION AMERICAS *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFF'S MOTION TO HOLD THE CASE IN ABEYANCE[1]

### I.  INTRODUCTION

This matter comes before the court on the motion of IBT/HERE[2] Employee Representatives' Council (the "Union") to hold this case in abeyance pending a ruling by a neutral arbitrator with the System Board of Adjustment ("SBA").  The Union represents employees of Gate Gourmet, Inc. (the "Company"),[3] and alleges that the Company unlawfully failed to pay employee health benefit contributions between July and August of 2005.  Because a ruling in the pending arbitration proceeding may moot the remaining claims in this case or

---

[1] "Abeyance" is defined as temporary inactivity, or suspension.  BLACKS LAW DICTIONARY 4 (7th ed. 1999).

[2] "IBT" and "HERE" are abbreviations for International Brotherhood of Teamsters and Hotel Employees and Restaurant Employees International Union, respectively.

[3] Gate Gourmet, Inc. is a subsidiary of the other named defendant, Gate Gourmet Division Americas.  Defs.' Opp'n at 4.  For ease of reference, the court refers to the defendants collectively.

1

obviate the need for further judicial intervention, the court grants the plaintiff's motion to hold this case in abeyance.

## II. BACKGROUND

### A. Factual Background

In April 2000, the parties executed a collective bargaining agreement (the "National Master Agreement" or "NMA") that became effective on June 1, 2000, and amendable on June 1, 2004. Am. Compl. ¶¶ 5-12. The Company services airlines, and as the airline industry has struggled in recent years, so has the Company. Defs.' Opp'n to Pl.'s Mot. for Temp. Restraining Ord. ("Defs.' Opp'n to TRO") at 7-9 & Goeke Decl. ("Goeke Decl.") ¶¶ 5-11. In pursuing cost reduction programs, the Company endeavored to lower its "single largest expense," labor costs. Goeke Decl. ¶ 13. Beginning in December 2003, and in anticipation of the impending amendability of the NMA, the Company entered into negotiations with the Union to cut costs.[4] Defs.' Opp'n to TRO at 10; *see also* Am. Compl. ¶ 13 (describing the Company's proposals as "deep, across-the-board-cuts in wages and benefits").

In May 2005, following unsuccessful negotiations, the Company provided the Union with the Company's "final offer," a package of reduced benefits and compensation representing the

---

[4] The Company served notices of proposed changes to the National Master Agreement ("NMA") pursuant to the Railway Labor Act ("RLA"), which requires carriers and unions to give written notice of an intended change in agreements affecting rates of pay, rules or working conditions. 45 U.S.C. § 156. Furthermore, the Union agreed to waive restrictions the NMA imposed on the Company's ability to propose any changes to the NMA prior to April 1, 2004. Am. Compl. ¶ 13.

Company's last effort to negotiate with the Union.[5] *Id.* ¶ 18; Defs.' Opp'n to TRO at 10 & Bralich Decl. ("Bralich Decl.") ¶ 5 & Ex. B. The Company then announced that if the Union did not approve the proposal, the Company would require all employees (i.e., Union and non-Union) under the plan to pay the full cost of medical coverage, with no contributions from the Company. Am. Compl. ¶ 20; Defs.' Opp'n to TRO at 14; Bralich Decl. ¶ 18. The Union overwhelmingly rejected the offer, negotiations ended, and the Company applied for mediation. Am. Compl. ¶ 17; Defs.' Opp'n to TRO at 10.

### B. Procedural Background

The plaintiff filed a complaint in this court and moved for a temporary restraining order ("TRO") and a preliminary injunction. *See generally,* Am. Compl. The plaintiff sought to enjoin the defendant from ceasing medical coverage contributions. *See id.* Following expedited briefing, this court denied the plaintiff's TRO request. Mem. Op. (July 1, 2005). The court ruled that this case involves a "minor" dispute as defined by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.,* and that the Union therefore cannot seek a "major" dispute injunction. *Id.* at 7-10. As planned, the Company terminated health coverage contributions on July 1, 2005. Following this court's ruling, the parties participated in arbitration in September 2005. Defs.' Mot. to Dismiss at 4. The parties agreed to bifurcate the arbitration so as to address liability first, and remedies, if necessary, second. Pl.'s Mot. to Hold Case in Abeyance ("Pl.'s Mot.") at 2. In addition, through ongoing negotiations, the Company agreed to reinstate health coverage

---

[5] The "last best offer" proposed, *inter alia*, to reduce (and freeze at the reduced level) wages and benefits and require employees to pay fifty percent of all future increases in health care premiums. Am. Compl. ¶ 19; *see generally* Defs.' Opp'n to Pl.'s Mot for Temp. Restraining Ord. at 10 & Bralich Decl. ("Bralich Decl.") Ex. B.

contributions as of September 1, 2005, at a rate equal to the pre-July 1, 2005 contribution rate. *Id.* Although the arbitrator handling this matter has not yet rendered a decision, the plaintiff anticipates that the arbitrator will issue a ruling on the issue of liability by the end of 2005. *Id.*

The defendants move to dismiss the complaint, arguing that the court's June 30, 2005 ruling and the Company's reinstatement of health coverage contributions moot the plaintiff's claims.[6] *Id.* The Company makes two specific arguments in support of this position. First, the defendants argue that because the court ruled that this case involves a minor dispute as defined under the RLA, the court does not have jurisdiction to entertain the plaintiff's claims. Defs.' Mot. to Dismiss at 5-6 (citing July 1, 2005 Memorandum Opinion at 2, 7-8). The defendants' interpretation of case law dictates that parties engaged in minor disputes "must take their grievances to binding arbitration, and each is free to act under its interpretation of the collective bargaining agreement." Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n") (quoting *Air Line Pilots Ass'n, Int'l v. E. Airlines, Inc.,* 869 F.2d 1518, 1520 (D.C. Cir. 1989)). Second, and as a corollary of the first argument, the defendants argue that the jurisdiction of the SBA in these minor disputes is "mandatory, exclusive and comprehensive." Defs.' Opp'n at 6 (quoting *Bhd. of Locomotive Eng'rs v. Louisville & Nat'l Rail Road Co.*, 373 U.S. 33, 38 (1963)).

The plaintiff makes two arguments in opposition. First, the plaintiff argues that this case is not moot because the Company's employees are entitled to compensation for the time period during which the Company did not make health coverage contributions. Pl.'s Opp'n to Defs.'

---

[6] The parties agree that Count II of the plaintiff's complaint is moot. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2; Defs.' Opp'n to Pl.'s Mot. to Hold Case in Abeyance ("Defs.' Opp'n") at 3 n.1. In Count II, the plaintiff alleged that the Company was prohibited from changing the status quo to preserve the grievance procedures under the Railway Labor Act, 45 U.S.C. § 184. Compl. ¶¶ 37-40.

Mot. to Dismiss at 3. Second, the plaintiff argues that the court, not the SBA, has jurisdiction to enforce the commands of the RLA. *Id.* at 6.

In addition to filing an opposition to the defendants' motion to dismiss, the plaintiff filed a motion to hold this case, and a ruling on the defendants' motion to dismiss, in abeyance pending a decision by the arbitrator. *See generally,* Pl.'s Mot. The plaintiff argues that the arbitrator's decision may obviate, or at least lessen, the need for further judicial involvement. Pl.'s Mot. at 4 (stating that "neither the parties nor this Court can state with assurance that further involvement of this Court will or will not be needed to make the employees whole"). The court turns to the plaintiff's motion.

## III.  ANALYSIS

### A.  Legal Standard for Stay

A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Airline Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis*, 299 U.S. at 254-55). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

### B. The Court Grants the Plaintiff's Motion to Hold the Case In Abeyance

The instant case involves the potential liability incurred by the defendant for ceasing health benefit contributions for its employees. *See generally*, Am. Compl. Because the dispute at issue here is a minor dispute under the RLA, the parties must engage in binding arbitration. 45 U.S.C. § 153; Mem. Op. (July 1, 2005) at 5, 7-10 (following *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 310 (1989)) and holding that because the Company's position is "arguably justified," the dispute is minor). Following the court's July 1, 2005 opinion, the parties participated in a two day arbitration. Pl.'s Mot. at 2. Additionally, the plaintiff represents that the parties agreed to submit the remaining contract-formation disputes, not covered in the statutorily required arbitration, to binding arbitration. *Id.*

In support of its motion for a stay of proceedings, the plaintiff argues that pending matters in front of the arbitrator may affect the future scope and necessity of litigation in this court. *See* Pl.'s Mot. The court agrees.

The contractual issue remaining in this case is currently pending in arbitration. Pl.'s Mot. at 2. The issue before the arbitrator is whether "the elimination of the company's contribution to the medical plan breached the collective bargaining agreements and, if so, what remedy is appropriate under the contract." Pl.'s Mot. at 1. Though the central issue in this litigation is whether the defendants violated the RLA's status quo requirement, *see* Compl. ¶¶ 31-36, that legal question requires the court to assess whether the defendants complied with their obligations under the parties' collective bargaining agreement. Because the defendants' compliance is the precise issue before arbitrator, the court may appropriately stay the proceedings. *Levya*, 593 F.2d at 863-864.

The defendants' opposition to the plaintiff's motion for abeyance restates the defendants position, articulated in its motion to dismiss, that the court does not have jurisdiction to entertain this case, and that the case is now moot.  As the defendant states, "the Court does not have jurisdiction over this minor dispute." Defs.' Opp'n at 8.

The court finds a symmetry in the parties' respective positions.  In essence, the parties agree that the arbitration will have a measurable affect on the scope of future litigation.  The difference, however, is that the plaintiff believes that the court should await a decision by the arbitrator before proceeding further and the defendants argue that the court should terminate its involvement immediately.

The defendants may be correct that the court no longer has jurisdiction over this case and that the SBA has exclusive jurisdiction.  Though this court has neither reason nor authority to entertain a case over which it does not have jurisdiction, the court's jurisdiction over the issues raised in this case is disputed by the parties.  A resolution of this dispute requires legal determinations by this court of the viability of the plaintiff's remaining claim following the court's July 1, 2005 Memorandum Opinion and the scope of the court's jurisdiction under the RLA.  The time may come when the court needs to resolve these legal issues.

The arbitrator's decision, however, may affect the parties' understanding of the scope of this case going forward, may reorient the parties' arguments, may catalyze a settlement of this matter, may moot the defendants' motion to dismiss, or may resolve the issues raised in this lawsuit in their entirety.  In short, the arbitrator's ruling may eliminate the need for this court to entertain the defendants' motion to dismiss.  If further judicial involvement is necessary after the arbitrator's decision, the court will then address those issues.  Among them, perhaps, will be the

defendants' motion to dismiss for lack of jurisdiction and mootness.

In the interest of judicial economy, the court grants the plaintiff's motion to hold this case in abeyance pending the arbitrator's decision.  *Airline Pilots Ass'n*, 523 U.S. at 879 n.6; *Naegele v. Albers*, 355 F. Supp. 2d 129 (D.D.C. 2005) (stating that "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests") (quoting *Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc.*, 274 B.R. 1, 3 (D.D.C. 2002)).

### IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion to hold this case in abeyance.  Additionally, the court orders the parties to confer in good faith following the arbitrator's ruling to determine whether the remaining issues in this case can be resolved without judicial intervention, and orders the parties to inform the court in writing within 20 days of the arbitrator's decision of the parties' joint or individual understandings of the scope of this case going forward.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of December, 2005.

RICARDO M. URBINA
United States District Judge